UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


ROGER CISCO,

    Plaintiff,

v.                                                Civil Action No. 2:12-739

NORFOLK SOUTHERN RAILWAY COMPANY,

    Defendant/Third Party Plaintiff,

v.

GEORGE DOTSON,

    Third Party Defendant.


CASEY STEVENS,

    Plaintiff,

v.                                                Civil Action No. 2:12-740

NORFOLK SOUTHERN RAILWAY COMPANY,

    Defendant/Third Party Plaintiff,

v.

GEORGE DOTSON,

    Third Party Defendant.


## MEMORANDUM OPINION AND ORDER

        Pending in both of these actions are defendant Norfolk Southern Railway Company's ("Norfolk") materially identical

motions to disqualify plaintiffs' counsel due to an impermissible conflict of interest, filed April 2, 2013, and a motion to withdraw as counsel in the Stevens matter.

These actions are not consolidated. Inasmuch as the motions are essentially identical in both cases, however, the court addresses them in tandem.

I.

Both plaintiffs, Roger Cisco and Casey Stevens, were employed by Norfolk. On May 2, 2011, Cisco and Stevens traveled in Cisco's car to retrieve a Norfolk vehicle at another location. Cisco drove his personal vehicle and Stevens was his passenger. Cisco and Stevens collided with another vehicle driven by third-party defendant George Dotson, who had pulled out in front of them onto Highway 119. The West Virginia Uniform Traffic Crash Report indicates that Dotson's failure to yield the right-of-way was the only contributing factor to the accident. He was so cited.

These two separate actions were subsequently instituted against Norfolk by Cisco and Stevens. The two men are represented by common counsel, namely, Robert S. Goggin, III, of the Philadelphia law firm of Keller & Goggin, P.C., and

Joseph M. Farrell, Jr., of the firm Farrell, White & Legg, PLLC, in Huntington. Neither Cisco nor Stevens plead any claims against each other. It appears that the applicable limitations period has expired.

Cisco asserts multiple serious injuries arising out of the collision that have resulted in his permanent disability. His Life Care Planner projects a total cost of $5,299,954.20 for his future and current medical treatment, interventions, and other necessary services. Cisco's retained economist projects the net present value of his pre-injury income capacity at $1,086,385.00.

In his separate civil action, Stevens claims that he sustained less serious injuries of the soft-tissue variety but likewise asserts that he is permanently disabled. Stevens' Life Care Expert estimates future medical care costs of $284,525.00, and his retained economist projects his net lost income ranges from $1,286,779.00 to $860,639.00.

On March 6, 2013, Norfolk's counsel deposed Cisco. He testified that Stevens spilled hot coffee on him, causing him to lose control of his car. When asked if the third party defendant Dotson had anything to do with the accident, he responded "I guess he had part, but I don't think, no. What made

3

the accident is the coffee really." (Dep. of Roger Cisco at 75). He continued as follows: "I could have maybe -- I probably could have avoided the accident if it wasn't for the coffee hitting me." (Id. at 76).

Cisco was also asked when he first told anyone about the spilled coffee. He testified as follows: "Well, my lawyer knowed (sic) about it." (Id. at 34). An accident reconstruction expert employed by Cisco opined similarly as follows: "There was enough time and distance of separation, before the collision . . . [for] . . . Cisco to . . . avoid the collision . . . but for the distraction of . . . the coffee being spilled onto" him by Stevens. (Ex. G., Def.'s Mot. to Disq. at 24).

On March 7, 2013, Norfolk deposed Stevens. He testified as follows:

> Q. Do you feel like you were at fault for the accident at all?
>
> A. No.
>
> Q. So if Mr. Cisco says that he thinks he would have avoided it but for that coffee spill, you would disagree with him?
>
> A. That's his opinion.
>
> Q. Okay. You just disagree with that opinion?
>
> A. I think he should have maintained control, coffee or no coffee.

4

> Q. Okay. So in other words -- and you correct me, absolutely, if I'm wrong -- what you believe NS did wrong is essentially what Mr. Cisco did wrong and failed to maintain control, right?
>
> A. Yes.

(Dep. of Casey Stevens at 71; see also id. at 69 (stating also "My buddy, Roger, you know, I love him to death, but it was overall him in the end.").

On two occasions, March 11 and 18, 2013, counsel for Norfolk inquired of Mr. Goggin and Mr. Farrell how they planned to address the material conflict that had developed between the two clients. No response was received. The motions to disqualify followed. In their April 16, 2013, response brief, Mr. Goggin and Mr. Farrell represent that "counsel has secured written waivers from both plaintiffs . . . . [and] has identified referral counsel and is in the process of finalizing the referral of one of the plaintiffs." (Resp. at 2). The court had not been presented with the waivers or any affidavit attesting to the counseling on the matter, if any, provided to either Cisco or Stevens.

On May 10, 2013, Mr. Goggin and Mr. Farrell moved to withdraw in the Stevens matter. The motion to withdraw noted that Stevens had retained James F. Humphreys & Associates, L.C., to represent him. Mr. Humphreys' firm has noticed its

5

appearance for Stevens. On May 21, 2013, the court directed Mr. Goggin and Mr. Farrell to produce under seal and <u>ex parte</u> the executed written waivers ("consents") executed by the clients in this matter. The court has reviewed the consents and counsels' affidavits. Those materials reflect that counsel fully discussed with Cisco and Stevens the hazards of joint representation, Cisco and Stevens asked numerous question, all of which were answered to the best of Mr. Goggin's ability, and immediately after both clients executed waivers. Since that time, Mr. Goggin has had over ten separate discussions with Cisco and Stevens respecting unfolding factual and medical information, with Cisco and Stevens reaffirming their waivers on each occasion. Both Cisco and Stevens executed new waivers as recently as June 4, 2013, with Mr. Stevens being counseled additionally by Mr. Humphreys at that time.

II.

A. Governing Standard

The Supreme Court of Appeals of West Virginia recently observed as follows:

> "A circuit court, upon motion of a party, by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer

6

> from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship."

Syl. Pt. 2, State ex rel. Verizon West Virginia, Inc. v. Matish, --- W. Va. ---, ---, 740 S.E.2d 84, 87 (2013) (quoting Syl. Pt. 1, Garlow v. Zakaib, 186 W. Va. 457, 413 S.E.2d 112 (1991)); Id. at ---, 740 S.E.2d at 99 ("[D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship of their own choosing.... [S]uch motions should be viewed with extreme caution for they can be misused as techniques of harassment.") (citations and internal quotation marks omitted).

West Virginia Rule of Professional Conduct 1.7 provides pertinently as follows:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> > (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> >
> > (2) each client consents after consultation.

7

>    (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>>        (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
>>        (2) <u>the client consents after consultation</u>. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(W. Va. R. Prof. Cond. 1.7(a) (emphasis added)). The supreme court of appeals has held that the primary concern under Rule 1.7(b) is that "[a]n attorney should 'not be permitted to put himself in a position where, even unconsciously, he will be tempted to "soft pedal" his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another.'" <u>Barefield v. DPIC Cos., Inc.</u>, 215 W. Va. 544, 557, 600 S.E.2d 256, 269 (2004) (quoting <u>Committee on Legal Ethics v. Frame</u>, 189 W. Va. 641, 645, 433 S.E.2d 579, 583 (1993) (citation omitted)); <u>State ex rel. Bluestone Coal Corp. v. Mazzone</u>, 226 W. Va. 148, 158-59, 697 S.E.2d 740, 750-51 (2010)("In certain cases the rule may serve to foster vigorous advocacy on behalf of the lawyer's current client by removing from the case a lawyer who would otherwise have to be conscious of preserving her former

8

client's confidences.")(citation and internal quotation marks omitted).

The comment to Rule 1.7 provides materially as follows: "Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9. See also Rule 2.2(c)." (W. Va. R. Prof. Cond. 1.7(a) comment; see id. (stating "Simultaneous representation of parties whose interest in litigation may conflict, such as coplaintiffs . . . is governed by paragraph (b). An impermissible conflict may exist by reason of . . . incompatibility in positions in relation to an opposing party . . . .")).

Rule 1.9, which is referenced by Rule 1.7 for the circumstances here appearing, provides as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> > (a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client <u>unless the former client consents after consultation</u>; or
> >
> > (b) <u>use information relating to the representation to the disadvantage of the former client</u> except as Rule 1.6 or Rule 3.3 would permit or require with respect to a

9

>    client or when the information has become
>    generally known.

(W. Va. R. Prof. Cond. 1.9 (emphasis added)).  In the <u>Matish</u> decision, the supreme court of appeals additionally noted as follows:

>    Rule 1.9(b) of the West Virginia Rules of
>    Professional Conduct has three primary objectives: (1)
>    to safeguard the sanctity of the attorney-client
>    relationship and the confidential information that is
>    shared by a client during the course of an attorney-
>    client relationship; (2) to protect from disclosure
>    the confidential information revealed by a client to
>    his/her attorney during the course of an attorney-
>    client relationship; and (3) to prohibit an attorney
>    from using such confidential information adversely to
>    his/her former client.

<u>Matish</u>, --- W. Va. at ---, 740 S.E.2d at 87.  As noted in <u>Matish</u>, the commentary to Rule 1.9(b) provides that "the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about the client when later representing another client."  <u>Id.</u> at 95 (quoting comment)).


B.   Analysis


        As the supreme court of appeals noted in <u>In re James</u>, "This case illustrates the difficulties that may arise when two . . . clients seek to engage the same attorney."  223 W. Va. 870, 875-76, 679 S.E.2d 702, 707-08 (2009).  There is

10

undoubtedly a conflict of interest situation presented.  Stevens and Cisco differ markedly concerning the cause of the collision, with Stevens attributing fault to Cisco and the latter inculpating Dotson.  Both Cisco and Stevens, however, have executed the written waivers contemplated by Rules 1.7 and 1.9(a). Additionally, Stevens has now retained experienced substitute counsel.

The matter of Rule 1.9(b) remains.  The conflict between Cisco and Stevens respecting fault that in turn results in a conflict for Mr. Goggin and Mr. Farrell interestingly does not appear to redound to the legal detriment of either plaintiff.  For example, in the event the cases proceed past the summary judgment stage, if the jury believes Cisco, with Stevens implicitly deemed to have caused the accident, Stevens shoulders no liability for damages.  Likewise, if the jury believes Stevens that Cisco failed to exercise due care, the latter will not be accountable for a monetary award.  Rather, in both instances, damages liability would attach to Norfolk, the entity attempting to have plaintiffs' counsel disqualified.

In assessing the proper outcome, the court is mindful of the well-settled proposition in West Virginia law that disqualification is a drastic step reserved for those instances where it is absolutely necessary.  That principle, along with

11

several other considerations, guides the Rule 1.9(b) analysis. First, it is unclear what, if any, confidential information, not generally known, Mr. Goggin and Mr. Farrell could use to the disadvantage of Mr. Stevens during the Cisco trial.  The cases are straightforward personal injury matters.  Also, the court would contemplate the Stevens matter being tried first.  It is thus uncertain what yet-secret information Mr. Goggin and Mr. Farrell could question Mr. Stevens about on cross examination during the Cisco trial after he would have previously undergone a searching inquiry during both his deposition and his own trial.

Second, Mr. Stevens is not left to his own devices in protecting the confidences, if any, that he shared with Mr. Goggin and Mr. Farrell.  He is represented by a competent advocate who will be expected to attend the Cisco trial, listen attentively during Mr. Stevens' cross examination, and ask to be heard in the event some prohibited area of inquiry arises.

Third, the court discerns no basis for concluding that Mr. Goggin and Mr. Farrell will represent Mr. Cisco in anything other than the vigorous manner demanded by the Rules of Professional Conduct, all the while remaining faithful to the strictures imposed upon them by those same Rules respecting Stevens.  In the event any doubt arises on their, or any other

interested individual's, part, the court will revisit the matter of disqualification.

### III.

Based upon the foregoing discussion, it is ORDERED as follows:

1. That Norfolk's motions to disqualify plaintiffs' counsel due to an impermissible conflict of interest be, and hereby are, denied; and

2. That the motion to withdraw as counsel in the <u>Stevens</u> matter be, and hereby is, granted.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: July 2, 2013

                                        John T. Copenhaver, Jr.
                                        United States District Judge