UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

ROGER CISCO,

      Plaintiff,

v.                                    Civil Action No. 2:12-739

NORFOLK SOUTHERN RAILWAY COMPANY,

      Defendant/Third Party Plaintiff,

v.

GEORGE DOTSON,

      Third Party Defendant.


CASEY STEVENS,

      Plaintiff,

v.                                    Civil Action No. 2:12-740

NORFOLK SOUTHERN RAILWAY COMPANY,

      Defendant/Third Party Plaintiff,

v.

GEORGE DOTSON,

      Third Party Defendant.


## MEMORANDUM OPINION AND ORDER

      Pending are defendant Norfolk Southern Railway Company's ("Norfolk") motions for summary judgment, filed January 22, 2014, and the joint motions for consolidation by plaintiffs, filed February 3, 2014.

I.


On May 2, 2011, both Roger Cisco and Casey Stevens reported to work at the Norfolk facility located in Williamson. They attended a safety meeting at 7:00 a.m.  Just prior to that meeting, Mr. Stevens was instructed by his supervisor, Jack Stepp, to travel with Mr. Cisco to retrieve the Norfolk truck that Mr. Stevens commonly used.  Mr. Cisco volunteered to drive with Mr. Stevens in Mr. Cisco's personal vehicle, a Ford Escort, to retrieve the truck.

Norfolk employees often used their own vehicles to drive to various job sites.  (See Norfolk Mem. in Supp. on Cisco at 2 ("This was nothing out of the ordinary, as Plaintiff [Cisco] often drove his personal vehicle during work hours and was compensated for his mileage.")). The truck was parked at a Norfolk facility located six miles away.  Prior to departure, Mr. Stevens poured himself a cup of hot coffee in the meeting room at the Norfolk facility.  The meeting room has countertops and a place for the Norfolk-provided coffee to be made, along with Styrofoam cups.  No lids were provided.

Mr. Stevens entered Mr. Cisco's car on the passenger side.  He did not place the hot coffee in the Escort's cup holder.  He fastened his seatbelt, a subject frequently

2

discussed at Norfolk safety meetings.  Mr. Cisco and Mr. Stevens then left the Norfolk facility and headed northbound on Route 119, a median-divided, four-lane highway, to obtain the truck.

As they approached the Victory Lane gas station, they were in the passing, left hand lane. Mr. Stevens described what happened next:

> I see this little flash of red -- I mean we always pay attention -- but saw this flash of red and said, 'Watch out.' I remember Roger say, 'I've got this,' or something to that effect. During that time, I tensed up and dropped the coffee which I'm thinking it landed on my left thigh and must have just splashed him. But I pretty much don't remember anything beyond that.

(Dep. of Casey Stevens at 41).  The "flash of red" was a vehicle driven by third-party defendant George Dotson.  Mr. Dotson ran a stop sign and pulled out in front of Mr. Cisco's car from the intersection where Route 119 and Victory Lane intersect.  Mr. Dotson was cited for his failure to yield.  The West Virginia Uniform Traffic Crash Report ("Crash Report") indicates that Mr. Dotson was the only contributing factor to the accident.[1]

The threat posed by Mr. Dotson's vehicle would have been evident at least 2.5 seconds prior to the point of impact.

---

[1]  On January 3, 2013, the Clerk entered default against Mr. Dotson following his failure to appear.  On January 7, 2013, the court denied without prejudice Norfolk's motion for default judgment, awaiting further proceedings respecting the determination and liquidation of Norfolk's liability, if any, to Mr. Cisco or Mr. Stevens.

Approximately 3-4 seconds prior to the impact, Mr. Cisco began an evasive maneuver to change from his lane of travel to another.  He asserts that he was distracted, however, by the hot coffee that splashed on him, causing him to lose control for a brief time.  He failed to complete the evasive maneuver and the collision occurred.  Mr. Stevens believed that Mr. Cisco was travelling between 50-55 miles per hour during the time period when Mr. Dotson's vehicle entered their lane of travel.

As a result of the collision, Mr. Stevens lost consciousness.  He next recalled someone knocking on the window and asking him to unlock the car door.  Mr. Cisco and Mr. Stevens both allege serious, permanent injuries arising out of the accident.

At his deposition, Mr. Stevens recalls that, just prior to the collision, Mr. Cisco failed to take sufficient evasive actions to control his vehicle and avoid the collision:

> Q. So in your opinion, when you say, 'NS failed to control the vehicle,' What you really mean is Roger failed to control the vehicle?
>
> A. Roger Cisco.
>
> Q. Okay. So you feel like Roger should have been able to avoid the accident?
>
> A. I thought that he could.
>
>         . . .
>
> Q. So if Mr. Cisco says that he thinks he would have

avoided it [the accident] but for that coffee spill,
you would disagree with him?

A. That's his opinion.

Q. Okay. You just disagree with that opinion?

A. I think he should have maintained control, coffee
or no coffee.

Q. Okay. So in other words — and you correct me,
absolutely, if I'm wrong — what you believe NS did
wrong is essentially what Mr. Cisco did wrong and
failed to maintain control, right?

A. Yes.

(Id. at 69, 71).


        Mr. Cisco, however, views the events of that day, and

the fault attributable, quite differently:

Q. How long had you been in the car driving with him?

A. I'd say [a]bout ten minutes or so.

Q. Did he have a lid on the coffee?

A. No.

. . .

Q. You don't remember whether another car pulled out
in front of you?

A. Well, I seen the vehicle and I was going to -- I
could have made it around and dodged him, but that
coffee hit me and I lost control of the vehicle. I
mean it burned.
. . .

Q. They [the Complaints] say that the accident
referred to was caused solely and exclusively by the
negligence of the defendant which is . . . [Norfolk].
Do you agree with that statement?

A. Yeah.

Q. You do? You don't think Mr. Dotson had anything to do with the accident?

A. I guess he had part, but I don't think, no. What made the accident is the coffee really.

(Dep. of Roger Cisco at 36, 38, and 75).

Both Mr. Stevens and Mr. Cisco retained a common liability expert, George P. Widas.  Mr. Widas states in his report as follows:

There was enough time and distance of separation, before the collision injury event, for driver Roger Cisco to perceive, react and maneuver to avoid the collision, from when the Dotson car was visible and perceptible as a hazard and vehicle in conflict, at an intersection, as crossing the roadway in front of his car and not stopping at the stop sign, but for the distraction of driver Roger Cisco by the coffee being spilled onto driver Roger Cisco by passenger and Norfolk Southern employee Casey Stevens.

Notwithstanding the external distraction of driver and Norfolk Southern employee Roger Cisco by the coffee being spilled onto driver Roger Cisco by passenger and Norfolk Southern employee Casey Stevens, driver and Norfolk Southern employee Roger Cisco could have maintained driving focus and control of his car, and mitigated the injury to Casey in the subject collision event, if driver and Norfolk South employee Roger Cisco exercised a greater degree of attention and control.

(Pls.'s Exp. Rep. at 24).

Norfolk's liability expert, Johnnie Hennings, testified as follows during his deposition:

Q. [I]n your experience have you ever experienced or heard -- have you ever heard of someone spilling

6

drinkable water in the car while the car is being driven?

A. Yes.

Q. Okay. Not really a surprise that that could happen, is it?

A. I'm sure it happens on occasion, not a surprise.

Q. And was it any liquid that people might drink in a car could get spilled while the car is moving, right?

A. That is a possibility, yes.

    . . .

Q. Right. If somebody spilled something hot on you when you're driving, do you think it would help or hurt your ability to remain focused on what you were doing?

A. I mean, just as a person, I mean -- I mean, I can see that given enough heat, if that's where your question is, it could be a distraction at some point once I was able to appreciate that it occurred.

    . . .

Q. Would you rather the person next to you in a car that you're driving have hot coffee with them or not?

A. I have no preference.

Q. Would you rather they spill it on you or not?

A. I would not want someone to spill hot coffee on me.

Q. Particularly while you're operating the vehicle, right?

A. I would agree with that.
. . .

Q. So do you think even if they did spill it on you, even in the face of a maneuver situation like this that you should be able to still control what's going on and avoid an accident?

7

All of things being equal?

A. Well, I think under a life-threatening situation, that would be my primary focus.

Q. You think you could do it?

A. In a life-threatening situation, I would think that I could.

Q. Well, this was a life-threatening situation here, wasn't it?

A. It was.

(Dep. of Johnnie Hennings at 29, 20, 87-88, 89, 90).

Mr. Widas also addressed the deficiencies of Norfolk's safe workplace efforts regarding highway vehicle operations. The general rules and regulations of Norfolk's Highway Vehicle Operations Manual ("Operations Manual") state, in pertinent part, as follows:

1. Non Business trips are prohibited. Unauthorized persons may not ride in or on Company vehicles.

2. It is the responsibility of the driver to be fully qualified and have the proper, current operator's license available for inspection by proper authority, when driving any Company vehicle. A passenger occupying the front seat must be alert to driving conditions and remind the driver of safe driving procedures when conditions require.

(Widas Exp. Rep. at 8). The Operations Manual is "silent on any issues related to distracted driving or other issues related to the subject collision injury event." Id. at 8. Mr. Cisco and Mr. Stevens assert that Norfolk did not properly train them on

8

safe driving or riding practices, particularly respecting employees traveling in privately owned vehicles on company business holding an open container filled with hot coffee.  They each assert claims under the Federal Employers' Liability Act, 45 U.S.C. § 51 ("FELA").


## II. Consolidation


A.   The Governing Standard


Mr. Cisco and Mr. Stevens seek an order consolidating these actions for remaining pretrial and trial events.  Federal Rule of Civil Procedure 42(a) provides as follows:

> (a) Consolidation. If actions before the court involve a common question of law or fact, the court may:
>
> > (1) join for hearing or trial any or all matters at issue in the actions;
> >
> > (2) consolidate the actions; or
> >
> > (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. Proc. 42(a).

Our court of appeals affords broad discretion to district courts in assessing the desirability of consolidation, recognizing the superiority of the trial court in determining how best to structure similar pieces of litigation.  See A/S J.

9

Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 933 (4th Cir. 1977) ("District courts have broad discretion under F.R.Civ.P. 42(a) to consolidate causes pending in the same district."). It has, however, provided guidelines for exercising that discretion. See Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982). Those guidelines essentially balance the specific risks of prejudice and possible confusion with the potential for inconsistent adjudications of common factual and legal issues and the burden on available judicial resources posed by multiple lawsuits. Id. at 193. Efficiency from a time and cost perspective are also considered. Id..

In opposing consolidation, Norfolk emphasizes the risk of jury confusion and prejudice that might come to pass if the cases are tried jointly. The court believes that risk can be ameliorated through careful instructions and a properly structured verdict form. In sum, these two cases involve an identical material issue of fact, namely, whether the spilled coffee was a contributing factor to the collision. There is also a commonality among fact and expert witnesses, along with the body of evidence to be adduced at trial. Additionally, the theories offered by Mr. Cisco and Mr. Stevens concerning fault and causation appear diametrically opposed.

Considering all of these factors, the risk of inconsistent adjudications, the unnecessary and substantial expense to the parties and witnesses, and the inefficient use of court resources constitute just a sampling of the undesirable consequences that will or may arise absent consolidation.

It is, accordingly, ORDERED that Mr. Cisco's and Mr. Stevens' joint motion for consolidation be, and hereby is, granted.  The two cases are consolidated for all purposes up to and including trial, with the Cisco matter designated as the lead action and all further filings in both cases to be made therein.  The scheduling order in the Stevens matter is vacated, with the remaining deadlines for case events, conferences, and trial to proceed according to the schedule in Cisco.

### III. Summary Judgment

A.   Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of

action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); <u>id.</u> at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  <u>Overstreet v. Ky. Cent. Life Ins. Co.</u>, 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.   Governing FELA Principles

The statutory source of the plaintiffs' claims is 45 U.S.C. § 51.  Section 51 provides pertinently as follows:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

13

45 U.S.C. § 51.  The elements of proof for a FELA claim are taken from the same jury instruction manual recently mentioned by the Supreme Court:

> First, that the defendant is a railroad engaged in interstate commerce;
>
> Second, that the plaintiff was an employee of the defendant in interstate commerce, acting in the course of his employment;
>
> Third, that the defendant or one of its employees or agents was negligent;
>
> and
>
> Fourth, that such negligence played a part, no matter how slight, in bringing about an injury to the plaintiff.

5 Hon. Leonard B. Sand et al., Modern Federal Jury Instructions § 89.02[1] (2012) (cited in CSX Transp., Inc. v. McBride, 131 S. Ct. 2630, 2643 (2011) (referencing the since-modified ¶ 89.02[1] as the then- "current model federal instruction").

Our court of appeals has noted "the 'judicially developed doctrine of liability granted to railroad workers by the FELA,' including its light burden of proof on negligence and causation." Estate of Larkins by Larkins v. Farrell Lines, Inc., 806 F.2d 510, 512 (4th Cir. 1986) (quoting in part Kernan v. American Dredging Co., 355 U.S. 426, 439 (1958)).  It has additionally observed that, in order "to further the remedial goals of the FELA . . . the Supreme Court has relaxed the standard of causation by imposing employer liability whenever

'employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 436 (4th Cir. 1999) (quoting, inter alia, Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 43 (1994)).

The Supreme Court reiterated this approach quite recently in the aforementioned McBride case.  McBride, 131 S. Ct. at 2643 (2011) ("'Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'") (quoting Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506 (1957)).

The McBride decision also observed as follows in discussing the general contours of FELA liability:

> "If a person has no reasonable ground to anticipate
> that a particular condition . . . would or might
> result in a mishap and injury, then the party is not
> required to do anything to correct [the] condition."
> If negligence is proved, however, and is shown to have
> "played any part, even the slightest, in producing the
> injury," then the carrier is answerable in damages
> even if "the extent of the [injury] or the manner in
> which it occurred" was not "[p]robable" or
> "foreseeable."

McBride, 131 S. Ct. at 2643 (footnote omitted).  At the same time, as noted by our court of appeals in Hernandez, the Supreme Court in Gottshall "cautioned that the FELA . . . is not to be

interpreted as a workers' compensation statute . . . ."
Hernandez, 187 F.3d at 436-37.


C.   Motion for Summary Judgment on Mr. Cisco's Claims


First, Norfolk contends that the accident was caused
solely by Mr. Dotson's negligence.  The theory hinges, inter
alia, upon an assemblage of the Crash Report, the vehicle data
gathered with respect to the accident, Mr. Dotson's self-
proclaimed fault, and a parsing of Mr. Widas' testimony.  All of
these considerations taken together give rise to a reasonable
inference that Mr. Dotson bears some measure, perhaps the far
greater measure, of fault for causing the mishap.  The court is
unable to conclude, however, that he should be apportioned the
entirety of the fault as a matter of law.  The apportionment
process, if any, is reserved to the trier of fact.

Second, Norfolk asserts that it, via Mr. Stevens,
could not have reasonably foreseen the accident.  In sum, it
asserts that Mr. Cisco must show that Norfolk

> should have reasonably foreseen that another driver
> would run a stop sign and position his vehicle in the
> direct path of Cisco's vehicle . . . [and] that such
> actions would cause a passenger to spill coffee while
> both occupants of the vehicle reacted to the
> unexpected situation in a matter of seconds before
> impact and that the coffee would prevent the driver
> form completely avoiding the collision.

16

(Norfolk Memo. in Support on Cisco at 14).  This contention does not withstand the most minimal level of scrutiny.  Norfolk provided hot coffee to its employees.  It knew those employees used their personal vehicles at times on company business, on occasion traversing highways at high speed.  It could anticipate that a spill of hot coffee on the driver may result in a vehicular accident.  The very existence of its safety program and the encouraging of its employees to use seatbelts demonstrates its understanding of the risks presented under the circumstances.  Summary judgment on this ground is inappropriate.

Third, Norfolk asserts that it could not have foreseen Mr. Stevens spilling coffee in the manner alleged.  Leaving aside for the moment Mr. Cisco's contention that Norfolk should have supplied lids for the coffee provided to its employees, plaintiffs have generally claimed that Norfolk offered inadequate safety guidance respecting travel while on company business in personal vehicles.  Mr. Widas' expert report inflates that position sufficiently to give rise to a genuine issue of material fact on the matter of foreseeability concerning Mr. Stevens' failure to secure his beverage.

Fourth, Norfolk asserts that when Mr. Stevens' availed himself of the Norfolk provided coffee during the early morning

hours, he was doing so for his own "personal enjoyment and benefit (not for the benefit or under the control of [Norfolk])." (Norfolk Mem. in Supp. on Cisco at 16). It additionally contends that, in the event Mr. Cisco was uncomfortable with the open hot coffee, he could have asked his foreman Mr. Stevens to discard it.

Respecting the first contention, one might just as easily urge the inference that Norfolk provided the coffee to aid the alert level of its employees, especially when they drove to various locations not long after rising for the day. In order to avail itself of the personal-frolic exception it seeks, Norfolk takes on a rather hefty burden. See, e.g., Gallose v. Long Island R.R. Co., 878 F.2d 80, 82–83 (2d Cir. 1989); Copeland v. St. Louis–San Francisco Ry. Co., 291 F.2d 119, 120 (10th Cir. 1961); Hoyt v. Thompson, 174 F.2d 284, 285 (7th Cir. 1949)) (holding that "under FELA, employers are liable for the negligence of their employees only if it occurs within the scope of employment, and no liability attaches when an employee 'acts entirely of his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer'") (emphasis added). Norfolk has not pointed to the absence of proof on the scope-of-employment issue that would justify a Rule 56 grant.

Respecting the second argument, the level of Mr. Cisco's comparative fault, if any, in not commanding his foreman to pour out the hot beverage is not susceptible to a determination as a matter of law.  Again, this type of argument is best left to the finder of fact after development of the matter at trial.

D.   Motion for Summary Judgment on Mr. Stevens' Claims

Some of the contentions offered by Norfolk for summary judgment against Mr. Stevens overlap with those already addressed immediately above.  Those grounds are not re-addressed.  Norfolk adds a new argument, however, respecting earlier statements made by Mr. Stevens and the opinions of Mr. Widas.

Norfolk points to a post-accident statement made by Mr. Stevens to Mr. Cisco's insurer to the effect that Mr. Cisco had no way to avoid the accident and did nothing to contribute to it.  It also notes Mr. Widas' view that Mr. Cisco's evasive maneuvers were appropriate under the circumstances.  This suggestion by Mr. Widas appears to conflict with the excerpt from his report summarized supra, where he suggested that there was enough time and distance of separation prior to the accident for Mr. Cisco to perceive, react, and maneuver to avoid the

19

collision.  If not, Mr. Widas posits that, in the final analysis, Mr. Cisco, as the driver, was obliged to maintain control regardless.

While the statements of fact uttered by Mr. Stevens, and the opinions offered by Mr. Widas, may be subject to attack as inconsistent or overstated, they do not rise to a quantum entitling Norfolk to judgment as a matter of law.  They are, at best, in the nature of evidentiary conflicts going to weight and credibility, which are properly left for the trier of fact.  For example, the statement offered to Mr. Cisco's insurer by Mr. Stevens came just seven days after the accident.  Mr. Stevens was still recuperating from the serious injuries he suffered. The impact of that timing, if any, will doubtless be addressed during direct and cross examination.  It will then be subject to the Seventh Amendment weighing process.[2]

---

[2]  In its reply brief, Norfolk contends that Mr. Stevens has asserted a newly minted negligence theory concerning its failure to provide lids for the hot coffee it furnished its employees. It asserts the theory requires expert testimony and that it is both speculative and in conflict with other record evidence.

The court does not understand the theory to require the aid of an expert at this juncture.  In its present form, it is a matter within the common understanding of the trier of fact and a subject for argument and opposing evidence.

E.    Conclusion


        In sum, the negligence, if any, of either Mr. Cisco or
Mr. Stevens, and hence Norfolk, is demonstrably fact bound.
Further, on the matter of causation, our court of appeals has
characterized the FELA burden as "light" and even
"'featherweight.'"   See, e.g., Hernandez v. Trawler Miss Vertie
Mae, Inc., 187 F.3d 432 (4th Cir. 1999)(quoting Estate of
Larkins v. Farrell Lines, Inc., 806 F.2d 510, 512 (4th Cir.
1986)); Strickland v. Norfolk Southern Ry. Co., 692 F.3d 1151,
1162 (4th Cir. 2012)(internal quotation marks omitted).  After
taking the full measure of these governing legal principles and
the evidentiary record, it is ORDERED that Norfolk's motions for
summary judgment be, and hereby are, denied.


        The Clerk is directed to forward copies of this
written opinion and order to counsel of record and any
unrepresented parties.

                        DATED: April 17, 2014


                        _____
                        John T. Copenhaver, Jr.
                        United States District Judge